IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY A. BUZZELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:05-cv-0495 |
| | ) |
| JO ANN B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) Judge Thomas M. Hardiman |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**I.   Introduction**

Plaintiff Kimberly A. Buzzell (Buzzell) brings this action pursuant to 42 U.S.C. §405(g) and 1383(c)(3) of the Social Security Act (Act), seeking review of the final determination of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI) and disability insurance benefits (DIB). This matter is before the Court on the parties' cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure based on the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's (ALJ's) decision, the memoranda of the parties and the entire record, the Court finds the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's motion for summary judgment will be denied and the Commissioner's determination will be affirmed.

## II. Procedural History

Plaintiff Buzzell filed an application for SSI and DIB on February 21, 2003. (R. 78-80). After the state agency denied her claim, she requested a hearing, which was held before ALJ Steven D. Slahta on March 31, 2004. (R. 40-61). Buzzell testified at the hearing and was represented by Danielle Lance. (R. 23). On June 3, 2004, ALJ Slahta issued a decision denying benefits. (R. 23-34). Buzzell filed a request for review, which the Appeals Council denied on February 23, 2005. (R. 7). The instant appeal was filed on April 15, 2005.

## III. Statement of Facts

At the time of the hearing, Buzzell was 44 years of age, making her a "younger person" under the regulations. (R. 78, 292). She has a GED and worked previously as a home health care worker, counselor, nurse's aide, and child care provider. (R. 43-44, 110, 118). Buzzell claims disability since January 18, 2003, because of depression, bipolar disorder, and chronic obstructive pulmonary disease (COPD). (R. 78-80, 104, 144, 292-94).

From January 6, 1995 through May 5, 2003 Buzzell was treated at Primary Care Health Services. (R. 168-249). On March 18, 2003, Buzzell reported that she stayed in bed from January 18, 2003 through March 1, 2003, but "didn't know why." (R. 44, 174). Three days later, Buzzell contradicted herself, stating that she was depressed in January and stayed in bed "for a number of days" and had been hyper-energetic for the few weeks prior to her March 21 appointment. (R. 287).

From October 17, 2002 through February 27, 2003, Buzzell was treated by Allegheny East MH/MR. (R. 160-63). In her individualized service plan dated October 17, 2002, the treatment provider indicated that Buzzell had relapsed on crack cocaine and a goal was

2

established that Buzzell regain and maintain abstinence through individual and group therapy, as well as participation in Narcotics Anonymous. (R. 163). She was discharged from the program on March 4, 2003, however, after she withdrew without notification. (R. 161). According to her treatment records, Buzzell was unable to abstain from substance abuse, so she was referred for chemical dependence treatment. (R. 161). In addition, Buzzell was diagnosed with major depression, recurrent, rule out bipolar disorder, and cocaine dependence. (R. 162). Buzzell's highest global assessment of functioning (GAF) for the year prior to her discharge on March 4, 2003 was 65 while her then-current GAF was 55. (R. 160).

Some three months after Buzzell's discharge from the Allegheny East MH/MR program, she received a consultative examination from Kerry Brace, Psy.D. (R. 250-60). Consistent with her withdrawal from the Allegheny East program, Dr. Brace found that Buzzell suffered from active substance dependence, which included a four-day binge on crack cocaine in March 2003. (R. 250, 252). Dr. Brace also noted that Buzzell's only medical diagnosis, COPD, was controlled with inhalers. (R. 252).

During the consultative examination, Dr. Brace noted that Buzzell's appearance and speech were normal and her mood was neutral. (R. 255). Buzzell stated that she has minor hallucinations out of the corner of her eye for a second or two and she had substance-induced hallucinations when she was using crack cocaine heavily. (R. 255). Dr. Brace indicated that Buzzell's productivity of thought, abstract thinking, and orientation were normal as was her fund of information. (R. 255-56). Although Buzzell was unwilling to attempt the serial sevens test, she performed the serial threes test with only one error. (R. 255-56). Dr. Brace also noted that under the influence of drugs, Buzzell has engaged in activity demonstrating a lack of both common sense and a concern for the outcomes of her behavior. (R. 256).

Consistent with the foregoing, Dr. Brace diagnosed Buzzell with: (1) bipolar I disorder, most recent episode, depressed, with inter-episode recovery and with psychotic features; (2) alcohol dependence; and (3) cocaine dependence. (R. 256). The prognosis included uncertainty regarding whether Buzzell could manage personal funds because of her active substance dependence. (R. 256). Finally, regarding occupational adjustments, Dr. Brace found that Buzzell had poor/none ability in ten out of fifteen work-related activities. (R. 259-60).

From March 12, 2003 through April 19, 2004, Buzzell was treated by Omar Bhutta, M.D., at the Turtle Creek Valley MH/MR. (R. 289-91). On March 21, 2003, Dr. Bhutta conducted a psychiatric evaluation of Buzzell after which he noted that she last used alcohol on March 1, 2003 and last used crack cocaine on February 25, 2003. (R. 287-88). Buzzell indicated that she felt hyper-energetic, was cleaning the house all the time, and went forty hours without sleep. (R. 287). Dr. Butta diagnosed: (1) bipolar affective disorder, currently hypomanic; (2) alcohol abuse; and (3) cocaine abuse. He also found that Buzzell had a GAF of 50. (R. 288). The same day as his evaluation, Dr. Bhutta completed a public welfare employability assessment form in which he opined that Buzzell was temporarily disabled for barely less than twelve months (January 21, 2003 until January 20, 2004) because of bipolar affective disorder and polysubstance abuse. (R. 164-65).

On August 1, 2003, Edward Zuckerman, Ph.D., completed a Psychiatric Review Technique Form (PRTF) in which he opined that Buzzell suffered from listed impairments 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). (R. 261). Dr. Zuckerman found that she had mild restrictions of daily living, mild difficulties in social functioning, and moderate difficulties maintaining concentration, persistence, or pace. (R. 271). Similarly, in the RFC assessment he prepared, Dr. Zuckerman indicated that Buzzell was not significantly limited

in fourteen areas and moderately limited in six areas. (R. 274-75).

About two weeks before the ALJ hearing, Plaintiff's representative obtained a letter dated March 18, 2004 from Buzzell's outpatient therapist, James J. Biagini, L.P.C., who opined that "Ms. Buzzell could benefit from Social Security Disability." (R. 286). He also noted that Buzzell's current GAF was 50, while her lowest was 30 and her highest was 60. (R. 258). Biagini stated that Buzzell's sobriety was affected by her bipolar disorder and that she had some periods of abstinence when she was stabilized with medications. (R. 286). He also opined that Buzzell "has had too many highs and lows to stabilize long enough to function adequately in full time productive employment." (R. 286). Mr. Biagini reiterated his opinion in a letter to Buzzell's representative dated September 23, 2004, which was submitted to the Appeals Council after the ALJ's decision in her case. (R. 300).

In addition, Plaintiff's representative submitted to the Appeals Council a public welfare employability assessment form dated January 10, 2005, in which Gail Kubrin, M.D. diagnosed Buzzell with bipolar disorder, mixed, and polysubstance dependency, in remission, and opined that she was temporarily disabled from January 2003 through February 2005. (R. 14-15).

At the administrative hearing, Buzzell testified that she began drinking alcohol at age twelve, but stopped using alcohol and cocaine thirty days prior to the hearing. (R. 45-46). She stated that she "binges" on cocaine and alcohol one day each month. (R. 46). She testified that her most recent binge was January 2003 and thereafter she stayed in bed from January 18, 2003 through March 2, 2003, and slept seventeen hours each day. (R. 44). Buzzell takes Wellbutrin, Trazodone, and Neurontin and claimed that her "ups and downs are not so long" and she sleeps when she is "down" and gardens, changes the oil in her car, and remodels furniture when she is "up." (R. 50-51).

In addition to Buzzell's testimony, the ALJ heard expert testimony from vocational expert (VE) L. Leon Reid, Ph.D. (R. 58-59). The ALJ asked Dr. Reid whether work was available in the national economy for a younger individual with the equivalent of a high school education who was precluded from performing all but medium work, in a controlled environment, unskilled and low stress (defined as one- and two-step processes, routine and repetitive tasks), primarily working with things rather than people and entry level. The VE testified that, consistent with the Dictionary of Occupational Titles, the hypothetical individual could perform a significant number of jobs in the national economy such as bundler (150,000 jobs), cleaner II (150,000 jobs), and kitchen helper (350,000 jobs). (R. 59).

The ALJ initially found that Buzzell's bipolar disorder did not satisfy the requirements of Section 12.04 of Appendix 1 (Affective Disorder) because of the impact of her alcohol and cocaine abuse on the affective disorder. (R. 28). Nevertheless, the ALJ found that Buzzell's combined impairments satisfied the requirements of Section 12.09B of Appendix 1 (Substance Addiction Disorders, Depressive Syndrome) because her combined impairments resulted in marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, and pace. Accordingly, the ALJ found Buzzell disabled since January 18, 2003. As noted previously, however, the ALJ then proceeded to analyze whether Buzzell's drug addiction and alcoholism was a contributing factor material to the finding of disability. (R. 28). Pursuant to 20 C.F.R. §404.1535(b) and §416.935(b), substance addiction is a contributing factor material to a finding of disability if the claimant would still be found disabled if she ceased using drugs and alcohol. Thus, the ALJ proceeded to consider which of Buzzell's limitations would remain if she stopped using drugs and alcohol and then determined whether any remaining limitations would be disabling. (R. 28).

IV.  **Standards of Review**

Judicial review of the Commissioner's final decision on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3).[2] Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding DIB), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent to those rendered under Title XVI. *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841

---

[1] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .

[2] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

7

F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; (parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support the ultimate findings. *Stewart*, 714 F.2d at 290. In making a determination, the ALJ must consider and weigh all of the evidence, both medical and non-

medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain the reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set her own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner applies a five-step analysis. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied . . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work . . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step . . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled per se because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 (2005), or that the impairment is equivalent to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, claimant

10

first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas,* 823 F.2d at 777. Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell,* 461 U.S. at 461; *Stunkard,* 842 F.2d at 59; *Kangas,* 823 F.2d at 777; *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett,* 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan,* 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity'"), *citing* 42 U.S.C. §423(d)(2)(C), and 20 C.F.R. §§ 404.1523, 416.923.

Section 404.1523, Multiple impairments, provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination

11

of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for the decision, and specifically explain why a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett,* 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson,* 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker,* 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security,* 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* When a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the

pain or symptom, and the extent to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. 404.1529(c) (2002). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in the decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. Although "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green*, 749 F.2d at 1070-71, *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to*

*refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)."

### V.     Analysis

This appeal presents one issue for review, *viz.*, whether the ALJ erred in finding that Plaintiff Buzzell is not entitled to benefits because her drug addiction and alcoholism are material contributing factors to the determination that she is disabled. 42 U.S.C. §423(d)(2)(C) and §1382c(a)(3)(J); 20 C.F.R. §404.1535(b) and §416.935(b). The regulations provide that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. §404.1535(b)(1) and §416.935(b)(1). More specifically, the regulations state:

> we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

20 C.F.R. §404.1535(b)(2) and §416.935(b)(2).

The parties have not cited, and the Court has not found, any precedential opinions of the Court of Appeals for the Third Circuit that address the burden of proof in cases involving the 1996 amendments to the Social Security Act codified at 42 U.S.C. §423(d)(2)(C) and §1382c(a)(3)(J). The Courts of Appeals that have addressed the issue appear to have held unanimously that the claimant bears the burden of proving that her substance abuse is not a contributing factor material to the claimed disability. *See, e.g., Brown v. Apfel*, 192 F.3d 492,

498 (5th Cir. 1999); *Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir. 2003); *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002); *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000); *Ball v. Massanari,* 254 F.3d 817, 821 (9th Cir. 2001); *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir. 1998); *Doughty v. Apfel,* 245 F.3d 1274, 1280-81 (11th Cir. 2001). In light of the decisions of the Fifth, Eighth, Ninth, and Eleventh Circuit Courts of Appeals – and the apparent lack of any authority to the contrary – this Court holds that Buzzell bears the burden of proving that her substance abuse is not a contributing factor material to her claimed disability.

Buzzell claims that her bipolar disorder renders her disabled even when she refrains from substance abuse. Pl. Br. at 3. In support of this argument, Buzzell relies on two principal sources of record evidence. First, she cites the consultative examination of Kerry Brace, Ph.D., in which Dr. Brace found that Buzzell's poor or complete lack of ability to function in several areas was attributable to her bipolar disorder rather than her drug abuse and alcoholism. Pl. Br. at 3; (R. 259-60). Second, Buzzell relies heavily on a September 23, 2004 letter from her therapist, Mr. Biagini, in which he opines that: "through observation and discussion with Ms. Buzzell, it seems highly unlikely that she would be able to function adequately in full time productive employment." (R. 300). Plaintiff emphasizes that Mr. Biagini expressed this opinion after he stated that Buzzell "reports continued abstinence from March 2004 and there are no apparent signs of substance abuse." (R. 300).

In addition to the foregoing citations to the record, Buzzell cites this Court's opinion in *Sklemar v. Barnhart,* 2002 WL 369806 (W.D. Pa. 2002) and argues that the ALJ failed to "identify some medical evidence supporting the conclusion that a claimant no longer would be disabled if he or she stopped drinking or taking drugs." *Id.* Buzzell also argues that the ALJ dismissed Dr. Bhutta's opinion that she was disabled from January 21, 3003 through January 20,

15

2004, because of a primary diagnosis of bipolar disorder. Pl. Br. at 5. Finally, Buzzell takes issue with the ALJ's finding that her mood swings were affected by her substance abuse and claims instead that her mood swings are caused solely by her bipolar disorder. Pl. Br. at 4-5.

In response to Plaintiff's arguments, the Commissioner first notes that the record demonstrates that Buzzell's bipolar disorder and her substance abuse are interrelated. Def. Br. at 9. Buzzell's treating physician, Dr. Bhutta, diagnosed her in March 2003 with bipolar affective disorder, alcohol abuse, and cocaine abuse. (R. 288). Dr. Bhutta also opined that Buzzell was temporarily disabled from January 21, 2003 through January 20, 2004 because of *both* bipolar affective disorder *and* polysubstance abuse. (R. 165-66) (emphasis added).

Like Dr. Bhutta, Dr. Brace diagnosed Buzzell with bipolar disorder, alcohol dependence, and cocaine dependence. (R. 256). After noting that Buzzell has "extensive history of substance abuse and/or dependence" (R. 251), Dr. Brace found that Buzzell demonstrated a "lack of common sense or self-control that went along with the bipolar problems, *as well as the substance abuse problems.*" (R. 254) (emphasis added). Consistent with this finding, Buzzell told Dr. Brace that she quit her job as a home health aide, where she drank on the job, because she started to have depressive decompensation. (R. 254). Thus, there is ample record support for the ALJ's conclusion that Buzzell's substance abuse adversely affected her functional capacity. *See Estes,* 275 F.3d at 724 (citing interrelation between disabilities and substance abuse).

In addition to the foregoing, the Court notes that Buzzell's treatment records are devoid of any evidence that she would remain disabled if she abstained from cocaine and alcohol abuse. Although this fact alone might suffice to affirm the ALJ's decision in light of the claimant's burden of proof on this issue, there is medical evidence of record that further supports the ALJ's

16

decision. The ALJ examined, in detailed fashion, the four areas of the "B" criteria for Listing 12.09B. The ALJ's citations to the record support his conclusions that absent substance abuse, Buzzell would be mildly limited in activities of daily living, moderately limited in social functioning, and moderately limited in concentration, persistence, and pace. (R. 29). The ALJ also correctly noted that Buzzell had not established any episodes of decompensation and he thoroughly analyzed the "C" criteria for listing 12.09B. (R. 29).

As both the Fifth and Eleventh Circuits have noted:

> [The claimant] is the party best suited to demonstrate whether she would still be disabled in the absence of drug or alcohol addiction. We are at a loss to discern how the Commissioner is supposed to make such a showing, the key evidence for which will be available most readily to [the claimant].

*Brown*, 192 F.3d at 498; *Doughty*, 245 F.3d at 1280. In spite of this challenging, hypothetical exercise, the Court finds that the ALJ performed a thorough and exacting analysis that is fully supported by the medical record. Unlike *Sklemar*, where medical records were illegible and the ALJ's findings were inconsistent, in the instant case, the ALJ identified medical evidence supporting the conclusion that Buzzell would not be disabled if she refrained from substance abuse. (R. 165-166, 256, 259-60, 285-86, 288).[3]

Buzzell's next contends that the ALJ erred by dismissing the report of her treating physician, Dr. Bhutta. The record demonstrates, however, that the ALJ did not dismiss Dr. Bhutta's report. Contrary to Buzzell's claim, Dr. Bhutta's report diagnosed both bipolar disorder *and* polysubstance abuse. Significantly, both were primary diagnoses. (R. 165). Thus, there is no record evidence to support Buzzell's claim that her mood swings were attributable solely to her bipolar disorder. Rather, Dr. Bhutta's report is consistent with the ALJ's finding that

---

[3] The Court also notes that *Sklemar* appears to place the burden of proof on the Commissioner. To the extent it does so, the Court declines to follow it in light of the numerous appellate authorities to the contrary.

Buzzell's substance abuse and bipolar disorder are interrelated.

Buzzell last argues that "plaintiff's therapist states that the plaintiff was still disabled on September 23, 2004. At this time she had refrained from the use of drugs and alcohol for six months." Pl. Br. at 5. This argument can be rejected summarily. Mr. Biagini's letter of September 23, 2004 was issued two months after the hearing. (R. 300). Thus, it constitutes new evidence. Plaintiff neglects completely to address this issue, much less to explain why it should be considered new and material, warranting a remand. *See, e.g., Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). As a licensed professional counselor, Mr. Biagini is not an acceptable medical source under the regulations. 20 C.F.R. §404.1513, §416.913. Moreover, his conclusory letter is unsupported by clinical data. (R. 300). Finally, the law is clear that a determination of disability is reserved to the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §404.1527(e).

## VI.  Conclusion

The Court has reviewed the ALJ's findings of fact and decision and determines that his ruling is supported by substantial evidence. Accordingly, the Court will deny Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision below.

An appropriate order follows.

_____
Thomas M. Hardiman
United States District Judge

February 28, 2006
cc: counsel of record